# ROVIRA

*v.*

# LOPEZ.

‑‑‑‑‑‑‑‑‑

San Juan, Law, No. 1384.

APPLICATION FOR NEW TRIAL.

Civil Code—Divisions.

    1. The Civil Code is divided into four books,—the first as to persons, second to property and ownership, third to methods of acquiring ownership, and fourth to obligations. No other heads are recognized in the civil law.

Lease—Service.

    2. Originally there was no provision for payment of personal services without a contract.

Agency—Compensation.

    3. There is a presumption that agency is gratuitous unless the services in question are part of a regular business, when the obligation of compensation is presumed.

Assumpsit—Payment.

    4. The presumption under the common law is that all services are to be paid for.

Charge of Court—Compensation.

    5. A charge of court that as to compensation it is not material whether the contract was one of hiring or of agency is not incorrect, and is not ground for a new trial, whatever the difference between the two subjects may be in other respects.

Agency—Several Forms of Business.

    6. In Porto Rico a man may carry on several kinds of business, and if a jury finds that such was the case, its verdict will not be disturbed merely because his main business was of a different character from that shown in the complaint.

Rovira v. Lopez.

Practice—Counterclaim.

> 7. If no evidence is introduced in support of the counterclaim, the lack of a finding upon the subject by the jury is immaterial.

Opinion filed July 27, 1920.

---

*Mr. Juan B. Soto* for motion for new trial.

*Messrs. Soto Gras* and *Siaca* opposed.

HAMILTON, Judge, delivered the following opinion:

1. The motion for a new trial is not under oath, but this probably makes no difference in so far as it sets up defects of law. If the court is convinced that it has given erroneous instructions it would direct a new trial regardless of how the matter is presented. It is claimed that the court erred in stating the law to the jury, in that it said that it did not make any practical difference under the facts of this case, whether the contract alleged in the first clause of the action was for the hiring of services or a contract of agency. A decision of this point requires consideration of the two subjects of hiring of services and of agency.

The Civil Code of Spain and Porto Rico, largely following the Roman law, draws a distinction between the several forms of contract. The Code itself is divided into four books, of which the first relates to persons, the second to property, ownership, and its modifications, the third to different ways of acquiring ownership, and the fourth, with which we are now concerned, to obligations and contracts. Strictly speaking,

obligations include contracts, but they are considered in different titles. Title II. relates to contracts in general, giving the necessary elements in § 1228, to wit: There must be (1) consent of the contracting parties, (2) a definite object which may be the subject of the contract, and (3) the "cause" for the obligation which may be established, these being discussed in detail, with the unfortunate error as to "cause" by speaking of it in § 1241 as equivalent to the Anglo-American "consideration,"—a very different thing. Holmes, Common Law, 253, 286. The titles of book IV. go on to discuss contracts under the head of those relating to property by reason of marriage, to purchase and sale, exchange, contracts of lease, annuities, partnership, agency, loans, depositum, aleatory, compromises, suretyship, pledge, and mortgage. Of these lease and agency will be considered separately. In addition there is a title, XVI. on obligations contracted without agreement, consisting of quasi contracts, by which the author becomes obligated to a third person, or there is a reciprocal obligation, under which is included where one voluntarily manages another's business and where a thing is received by mistake; and besides this there is embraced in the same title obligations arising from fault or negligence, much briefer in treatment, but giving rise to as much litigation as all forms of contract. No other heads are recognized in the Civil Code.

2. Taking up first title VI. §§ 1445–1506, on the subject of contracts of lease, we find that the lease may be of things, works, or services, and that in this one of the parties binds himself to execute a work or to deliver a service to the other for a specified price, §§ 1445, 1447. Omitting questions of lease of property, whether urban or rural, the Code takes up under

Rovira v. Lopez.

chapter 3 of this title the "hiring of work and services," in-
cluding professional services, servants and laborers, and con-
tracts for a lump sum or otherwise. There is a third article
of this chapter on the subject of transportation which need not
be considered.

The services of servants and laborers may or may not be for
a fixed period. Professional services, it is provided, shall be
subject to the agreement of the parties as to remuneration, and
where there is no agreement the reasonable value may be re-
covered. The main subjects covered relate to domestic service,
field hands and other laborers, and the provision as to profes-
sional services is an addition to what was in the Spanish Code.
In other words, the Spanish Civil Code, § 1583, does not relate
at all to professional services, and therefore such services are
not within the scope of the section as commented by Manresa
and others. It may be that the Porto Rican amendment has
caused some confusion in the consideration of the section. In
Garcia v. Cañada, 11 P. R. R. 403, it is declared that no pro-
vision is made in the Civil Code for payment of personal serv-
ices in a case where there is no contract made. That case was
one of a domestic servant, and the court notices that it was com-
mon in Porto Rico for servants to work for board and lodging,
and that there is no allegation or proof of any custom or agree-
ment to pay wages. This case seems to control that of Agosto
v. Woods, 13 P. R. R. 356, in which the plaintiff sues as "judi-
cial agent" in different actions instituted by a deceased woman
under the direction of her attorney, and at the request of the
decedent. The court construes the complaint as being brought
on a contract for lease of services, for which a reasonable remu-
neration is claimed. It holds that the price must, under §

Rovira v. Lopez.

1447, be specified. The argument at bar is that no price was specified at the time of the employment sued on, and that therefore none can be recovered.

3. Does the case come within the provisions of the law of agency under the Civil Code? The Porto Rico supreme court, in considering the case of Agosto v. Woods, speaks of it as analogous to the preceding case brought under the provisions as to lease of services, § 1447, but nevertheless takes up the law of agency also. The Spanish law of agency comes down from the Roman law, and the service is presumed to be gratuitous. Digest, Bk. XVII. title 1, law 1; Institutions, III. title 27, law 13. Ancient civilization was very different from modern, probably growing in part out of the custom of clientage, a semiservile relation which has long since disappeared from law. The Spanish (and Porto Rican) Code, therefore, adds the provision that "nevertheless if the agent has for the occupation the performance of services of the kind to which the agency refers, the obligation of compensating him is presumed." § 1613. Both French and Spanish commentators have observed the discrepancy between ancient and modern customs, and indicate that modern agency is generally, if not always, one for compensation, so that the second clause of the section has really become the rule. So Laurent in commenting corresponding article 1986 of the Code Napoleon, which says procuration is gratuitous if there be no contrary agreement. So also Manresa in commenting art. 1711 of the Spanish Code, which is identical with the Porto Rican. Thus a decree of the supreme court of Spain of February 7, 1880, decides that between principal and agent it is only necessary that there be some manifestation of an intention to compensate the agent. In other words, if the

agent is called upon to perform something that is within the
scope of his business, he is to be compensated accordingly.    If
a man is called upon to do something special which is not em-
braced within the scope of any known business, there is no pre-
sumption of compensation, and compensation can follow only
upon express agreement.

4. It is to be observed that the Code of Civil Procedure,
which is necessarily followed in this case is, on the other hand,
of American origin.    A fundamental of American procedure,
coming down from the English, is assumpsit, under which there
is a fictitious agreement to pay for whatever benefit and services
are performed by another. . However, the old English form of
assumpsit is not followed in this or any other Code complaint,
and it would seem that the Civil Code must control.

5. The court charged the jury that for the purposes of this
case it was not material whether the cause of action was looked
at under the law of hiring or under the law of agency.    It would
seem that the transaction comes under the law of agency, and
this might quite properly have been the instruction given to the
jury; but as to the point under discussion, that is to say, wheth-
er the service performed was to be paid for or not, there seems
to be no substantial difference between the two classes of con-
tract, hiring or agency.    There is a marked difference between
the two employments.    In agency one person represents another,
and may even represent him without disclosing the name of the
principal.    In hiring, certainly until the amendment of the
Spanish Code, the services in contemplation were domestic,
field, mechanic, and the like,—labor in the usual sense of the
word.    The court was not discussing this point at all, but the
question of compensation.    In either case there must be some

Rovira v. Lopez.

understanding from the beginning, express or implied, for compensation. It is not perceived that there was any error in this instruction to the jury.

6. The next three grounds for setting aside the verdict relate to the action of the jury. It is not perceived that the jury is shown to have acted from passion or prejudice, or even that the preponderance of the evidence is against the verdict. It is quite true that under the statute of agency, § 1613, the obligation of compensating the agent is presumed "if the agent has for an occupation the performance of services of the kind to which the agency refers," and that the plaintiff in this case testified that he was a broker, corredor. Escriche defines corredor in terms of mercantile law, and this is the view in Spain and in the Spanish supreme court. But the suit at bar is prosecuted in Porto Rico, where there are not to be expected the fine divisions of occupations found in Spain. It is a matter of common knowledge that a merchant here usually carries on several lines of business. It is also common knowledge that agency is highly developed. It has been said that in Mediterranean countries, and to some extent in Spanish colonies, it is difficult to find a man carrying on his own business; an administrator or other kind of agent exists for almost every kind of business. One cannot go any where without somebody offering to do something for him, expecting compensation. If a jury, therefore, knowing these conditions, finds that in Porto Rico a corredor may properly act as a "judicial agent," corresponding somewhat to the functions of an Anglo-Saxon attorney, as distinguished from a barrister, it would not seem that the court should interfere. Such is the case at bar.

The evidence seems to show that this was the view taken by

Rovira v. Lopez.

the parties. The defendant certainly knew that the plaintiff was working on the matter of compromise with Fabian, had interviews with him, and at least one letter relates to the subject. It would seem to be traveling entirely outside of the record to suppose that this was done by the plaintiff out of friendship. It is true that the defendant at one time spoke of giving him a gratification, but the plaintiff is not shown to have agreed to this, at least in the sense of its being a mere pour boire.

7. Another ground urged for a new trial is that the verdict is defective in not passing also upon the counterclaim of the defendant. The verdict is for the exact amount of the plaintiff's claim, omitting all idea of interest. At the trial, however, the counterclaim does not seem to have been insisted upon and was regarded as waived. No evidence was directly introduced to support it, and the court was unable to give any express charge in relation to it. The jury found a verdict according to the evidence, that is to say, according to evidence on the plaintiff's claim, there being none for the defendant on his counterclaim. As to the use of the word "damages," damages are sued for in all cases of money. Stephen, Pl. 40, 105. The verdict runs according to the complaint. Winch & H. Journal Entries, 72; 2 Loveland, Forms of Fed. Pr. 2126.

Upon the whole, therefore, there seems to be no ground for interference by the court with the verdict, and the motion for a new trial is refused.

It is so ordered.